UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Jill L. Mazurek (f/k/a Jill L. McCavitt)**,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>**FutureSimple Inc.**, a Delaware corporation,  )<br>**Zendesk, Inc.,** a Delaware corporation, and  )<br>**Abbott Merger Sub, Inc.**, a Delaware  )<br>corporation,  )<br>)<br>Defendants.  ) | **Case Number:**<br><br>**Judge:** |

**PLAINTIFF'S COMPLAINT**

Plaintiff, JILL L. MAZUREK (f/k/a Jill L. McCavitt) (hereinafter referred to as "Plaintiff" or "Mazurek"), by and through her attorneys, RM PARTNERS LAW LLC, alleges and complains against Defendants FUTURESIMPLE, INC. ("FutureSimple"), ZENDESK, INC. ("Zendesk") and ABBOTT MERGER SUB, INC. ("Abbott") (hereinafter collectively referred to as the "Defendants") as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action against Defendants for the discriminatory treatment and termination of Plaintiff based on her pregnancy and need for maternity leave and Defendants' violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e), as amended by the Pregnancy and Discrimination Act of 1978.

2. On February 13, 2013, Defendant FutureSimple hired Plaintiff as a Director of Accounting and Operations. Plaintiff's duties included handling all accounting, finance, operations, and human resource duties, as well as handling associated administrative duties as needed.

3. During her tenure at FutureSimple, Plaintiff received very good performance reviews, multiple salary increases, and additional stock options as a result of her performance. Plaintiff was also told by FutureSimple's Chief Executive Officer, Uzi Shmilovici ("Shmilovici"), that he intended for Plaintiff to eventually become the Chief Financial Officer of FutureSimple. On March 31, 2014, Plaintiff was promoted to Vice President of Finance & Operations and was requested to move with FutureSimple to the San Francisco Bay Area to help grow FutureSimple and set up their future headquarters.

4. Despite Plaintiff's outstanding performance and contributions to FutureSimple, FutureSimple subjected her to discrimination and retaliation because she was a pregnant woman. On January 30, 2018, after almost five years of service to FutureSimple, FutureSimple informed the Plaintiff she was being laid off as of February 28, 2018, which was just two days before her baby's due date.

5. FutureSimple targeted a loyal and extremely talented senior executive for a layoff because she is a woman who was nearing the end of her second pregnancy, and FutureSimple desired to circumvent an earned and previously approved maternity leave scheduled to commence on February 16, 2018. FutureSimple's conduct is reprehensible on legal and moral grounds.

6. Simply put, FutureSimple did not want to be obligated to pay a high-level, high performing employee who would not be producing any output during her sixteen-week maternity leave. Plaintiff was targeted and terminated solely because she was pregnant.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, in that it is a civil action arising under Title VII. This court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district under 28 U.S.C. §1391(b) in that the unlawful employment practice was committed in this district, FutureSimple employed Plaintiff in this judicial district, conducted substantial business in this judicial district, and all or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## CONDITIONS PRECEDENT

9. On March 21, 2018, Plaintiff timely filed charges of sex and pregnancy discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). *See Charges of Discrimination, attached hereto as **Exhibit A**.* On October 9, 2018, Plaintiff filed a First Amended Charge of Discrimination. *See First Amended Charges of Discrimination attached hereto as **Exhibit B**.*

10. On or about February 6, 2019, the EEOC issued Plaintiff a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII. *See Notice of Right to Sue, attached hereto as **Exhibit C**.*

## PARTIES

11. Plaintiff is a woman who resides in Clarendon Hills, Illinois. Plaintiff is a citizen of Illinois.

12. Plaintiff is an employee as defined by Title VII.

13. Upon information and belief, FutureSimple is a Delaware corporation with its principal place of business located in Chicago, Illinois.

14. Upon information and belief, ZenDesk is a Delaware corporation with corporate headquarters located in San Francisco, California. Zendesk acquired FutureSimple on or about September 10, 2018.

15. Upon information and belief, Abbott is a Delaware corporation with corporate headquarters located in San Francisco, California. Upon information and belief, Abbott is a subsidiary of ZenDesk.

16. Upon information and belief, Zendesk and Abbott approved and ratified the discrimination complained of in this Complaint and therefore have liability as employers under Title VII and the Pregnancy Discrimination Act.

## FACTS

17. Plaintiff was hired by FutureSimple on February 13, 2013 and began working in FutureSimple's Chicago office on February 18, 2013 as a Director of Accounting and Operations. Plaintiff's duties included handling all the accounting, finance, operations, and human resources duties, as well as handling associated administrative duties as needed.

18. FutureSimple develops and delivers cloud-based sales and customer relationship management software and was founded in 2009.

19. During her tenure, Plaintiff built up the finance and operations departments and handled many financial, operation, and strategic planning functions for the company, all with considerable success and documented favorable performance reviews.

20. FutureSimple recognized Plaintiff's accomplishments and job performance by promoting her to Vice President of Finance and Operations on March 31, 2014. Plaintiff was also given a moving bonus and pay increase to relocate to the San Francisco Bay Area to assist in starting up FutureSimple's California offices.

21. Plaintiff was solely responsible for everything relating to accounting, financial, reporting, operations, United States' human resources, debt financing, and administration, all while finding lease space, furnishing it and getting the office ready for staff.

22. Plaintiff's responsibilities and initiative helped to grow FutureSimple.

23. Plaintiff kept clean books so business decisions could be made based on actuals compared to budget goals and key performance indicators. Plaintiff also implemented many systems to streamline processes and automate tasks wherever possible for efficiency, accuracy, and audit reliability impacting financial reporting, billing, payroll, Human Resource administration, expense tracking, and equity management which included NetSuite, in-house billing system, ADP, Zenefits, Expensify, and Carta.

24. Plaintiff also worked with a broker to find affordable office space in a location that would still attract top talent in the Bay Area (just down the road from the offices of Google) and ensured that FutureSimple's Chicago office continued operating at its highest level of excellence.

25. Plaintiff worked with an employment lawyer in California to change the status of certain roles in the company to non-exempt to ensure FutureSimple paid those employees overtime as required by law.

26. All of these responsibilities and initiatives demonstrate that Plaintiff was a multi-faceted employee of FutureSimple and was critical to its growth and success. Plaintiff wore the hats of many employees, thereby affording FutureSimple the luxury of paying one employee's salary and receiving the work output of many employees.

27. Plaintiff was rewarded for her performance and was provided with stock options in May of 2014 and given additional stock options in December of 2015 as a gesture of being a partner in FutureSimple.

28. Being given additional stock options was a huge indication of how FutureSimple felt about Plaintiff's performance and contributions to FutureSimple because Shmilovici did not take lightly who received options in FutureSimple. The amount of option grants given to

employees was based on performance and dedication to FutureSimple. Plaintiff was in the top percentage of those who received options, just below the C-Suite employees and founders of the company.

29. Plaintiff was also provided with raises in March of 2014, December of 2014, August 2015 and September 2016, all as a result of her outstanding performance.

30. In December 2014, FutureSimple and Plaintiff agreed on Plaintiff's career goal to become Chief Financial Officer of FutureSimple and formulated a plan for Plaintiff to achieve this goal.

31. FutureSimple publicly recognized Plaintiff's efforts and contributions to the company over the years, including in a recorded meeting in September 2015 where Shmilovici thanked Plaintiff in front of the entire company for all the work she did to help FutureSimple close its Series C $30 million funding round.

32. These recognitions are not insignificant because Shmilovici set a high bar for performance; if employees did not perform, they were terminated. FutureSimple's turnover rate was extremely high. During Plaintiff's tenure, Shmilovici hired and fired three different vice presidents of Sales and two different vice presidents of Marketing.

33. Twice in the last few years, Shmilovici asked and persuaded Plaintiff not to leave FutureSimple after Plaintiff received other job offers, one of which was for a Chief Financial Officer position. Shmilovici represented to Plaintiff on multiple occasions that he intended for her to become the future Chief Financial Officer of FutureSimple.

34. However, despite these misrepresentations made by Shmilovici, Plaintiff was not offered the Chief Financial Officer position. Rather, in September 2016, two months after Plaintiff

told Shmilovici that she was expecting her first child, he informed her that FutureSimple was hiring an outside Chief Financial Officer.

35. Plaintiff reasonably and justifiably relied on Shmilovici's misrepresentations when foregoing other employment opportunities and was shocked when he informed her they were hiring an outside Chief Financial Officer.

36. On or about December 13, 2016, FutureSimple hired a Chief Financial Officer while Plaintiff was on maternity leave after giving birth to her first son on November 24, 2016.

37. The Chief Financial Officer hired by FutureSimple was a woman in her mid-50's, who had no children at home.

38. The decision to hire a Chief Financial Officer was made despite the fact that Plaintiff continued to receive favorable performance reviews.

39. In August 2017, Plaintiff notified FutureSimple, specifically her supervisor, that she was pregnant with her second child and was due in six months.

40. Plaintiff formally notified Human Resources on January 6, 2018 that she would need to take maternity leave and would begin her maternity leave on February 16, 2018. Human Resources approved Plaintiff's request for maternity leave.

41. On January 17, 2018, while preparing for maternity leave, Plaintiff was told by FutureSimple's human resources department that everything was all set and nothing more was needed in order for Plaintiff to receive her fully-paid, sixteen-week maternity leave.

42. However, on January 30, 2018, Plaintiff was terminated by FutureSimple allegedly solely due to the economic distress of FutureSimple.

43. FutureSimple's reason for Plaintiff's termination was pretextual. In reality, Plaintiff's termination was due to her female gender, her pregnancy, and the fact that she was about to begin an earned and approved sixteen-week, fully paid maternity leave on February 16, 2018.

44. Plaintiff was told by the Chief Financial Officer that she was not going to be paid her earned maternity leave benefits because FutureSimple needed to find ways to cut costs and FutureSimple could not afford to give everyone sixteen-weeks of pay for such leave.

45. Following Plaintiff's termination, on February 13, 2018, FutureSimple's head of United States Human Resources, Melissa Dreuth ("Dreuth"), called the Plaintiff to inform her that she disagreed with how FutureSimple handled Plaintiff's termination, that she was not a part of the decision-making process, and in fact it was one of the reasons she resigned as of February 16, 2018.

46. Per Dreuth, the Chief Financial Officer informed her that it was permissible to terminate Plaintiff and not pay her maternity leave because Plaintiff resides in Illinois and the maternity benefits in Illinois are non-existent.

47. Not only is the aforementioned statement factually wrong, the rationale given by the Chief Financial Officer is flawed because the laws in Illinois have no bearing as to whether FutureSimple adheres to its maternity policy, which does not discriminate based on where an employee is located.

48. Plaintiff was the only employee of FutureSimple of her caliber, financial skills, tenure and talent to be terminated by FutureSimple. All of the other layoffs by FutureSimple that occurred were due to poor performance of the employees, re-strategizing aspects of the business, and the elimination of unnecessary roles.

49. Plaintiff was the only employee who was terminated who did not fall into any of the aforementioned categories. Plaintiff's termination was solely due to the fact that her earned maternity leave benefits meant that she was a cost to FutureSimple without work output.

50. FutureSimple did not terminate similarly situated non-pregnant employees.

51. At all relevant times, Plaintiff was capable of performing and was performing all of her job duties and responsibilities in a manner that met and/or exceeded FutureSimple's legitimate business expectations.

52. There was no legitimate non-discriminatory reason for Plaintiff's termination from FutureSimple's employment.

53. Plaintiff was unemployed as a result of her termination and suffered economic hardship as a direct and proximate result thereof.

54. Plaintiff has suffered emotional distress as a direct and proximate result of her unlawful termination.

55. Plaintiff lost all of her compensation and benefits, including, but not limited to, essential health insurance benefits, as a result of being terminated. The health insurance alone resulted in an out-of-pocket expense of $2,039.60 to Plaintiff.

56. Not only did the loss of Plaintiff's health insurance benefits result in a financial burden to Plaintiff, but Plaintiff was put under emotional distress because she needed to find health insurance just days before her baby was born.

57. When Plaintiff learned that the head of Human Resources, Melissa Dreuth, resigned, she was concerned that the remaining staff at FutureSimple would not know how to handle Human Resources and benefit-related matters, including health insurance. Therefore, she and her then-fiancé made the decision to get married at City Hall on February 22, 2018, when she

was thirty-nine weeks pregnant, in the event she needed last-minute health insurance. This was a difficult decision for Plaintiff because that is not how she wanted to get married – she wanted a real wedding with family and friends (which she later did in September of 2018). Plaintiff's marriage remained a secret to her closest friends and family.

58. On March 1, 2018, Plaintiff reached out to WageWorks, FutureSimple's COBRA provider, to enroll as instructed by FutureSimple's Human Resources department and was told by COBRA she was not in the system (even though Plaintiff was instructed by Human Resources to contact WageWorks). As Plaintiff feared, FutureSimple failed to add Plaintiff to the system and it would now take weeks to process her enrollment application, leaving Plaintiff without the required proof of insurance coverage for her delivery.

59. On March 2, 2018, the day before Plaintiff's baby was delivered, Plaintiff had her 40-week appointment to see her obstetrician. The physician's billing department asked Plaintiff for new insurance information because the insurance on file had expired. Plaintiff advised the billing department that she would have COBRA in the future, but would not have proof of coverage for a few weeks. The billing department responded that they required proof of coverage for their records and for the hospital for delivery of the Plaintiff's baby.

60. As a result, Plaintiff was panicked, in despair and was in tears. Following her doctor's appointment, Plaintiff's husband contacted his employer and requested that Plaintiff be added to his health insurance plan as soon as possible. Fortunately, his employer was able to do so before 5:00 p.m. because that evening Plaintiff went into labor.

61. On March 3, 2018, at approximately 3:00 a.m., Plaintiff delivered a baby boy.

62. FutureSimple's actions were knowing, intentional and malicious. The discriminatory and retaliatory conduct, as alleged herein, was engaged in, encouraged by, ratified

by, and condoned by FutureSimple. FutureSimple knew and intended that its conduct violated applicable federal law.

63. Upon information and belief, on September 10, 2018, through a merger and acquisition, Zendesk and Abbott acquired the potential liability of FutureSimple under this employment discrimination charge.

64. Upon information and belief, Zendesk and Abbott approved and ratified the discrimination complained of in this Charge and therefore are liable under Title VII and the Pregnancy Discrimination Act.

## CAUSE OF ACTION

### COUNT I
*Against all Defendants*

### DISCRIMINATION ON THE BASIS OF SEX
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended by the Pregnancy Discrimination Act, 42 U.S.C § 2000e(k)

65. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

66. The Pregnancy Discrimination Act of 1978, an amendment to Title VII of the Civil Rights Act of 1964, U.S.C. §2000e(k), prohibits discrimination on the basis of pregnancy.

67. Plaintiff was a pregnant employee of FutureSimple within the meaning of "employee" as defined under 42 U.S.C. §2000e(f).

68. Defendants are employers under 42 U.S.C. §2000e(b) which defines an "employer" to include a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

69. Defendants were aware that Plaintiff was pregnant.

70. Defendants discriminated against Plaintiff because of her pregnancy and need for maternity leave, as alleged herein.

71. Defendants knew that the discrimination and termination were based on her pregnancy and need for maternity leave.

72. There was no legitimate non-discriminatory basis for the termination of Plaintiff.

73. Plaintiff suffered damages as a direct and proximate result of Defendants' violations as alleged herein.

74. All of Defendants' actions were willful, wanton and undertaken in utter disregard for Plaintiff.

75. By reason of the foregoing, Defendants have deprived Plaintiff of certain benefits, privileges, terms and conditions of employment, based on her pregnancy, causing her damages and injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Damages sufficient to compensate Plaintiff for her injuries, including compensatory and consequential damages, including emotional distress;

B. Back pay, inclusive of lost wages, pension benefits, health insurance benefits, and other such fringe benefits;

C. Pre-judgment and post-judgment interest;

D. Reasonable attorneys' fees;

E. Cost of this action;

F. Punitive damages; and

G. Any and all such other relief as this Honorable Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Respectfully submitted,

By: /s/ Danielle S. McKinley
      One of her Attorneys

Mary-Lisa Sullivan
Danielle S. McKinley
RM PARTNERS LAW LLC
305 N. Peoria, Suite 200
Chicago, Illinois 60607
(312) 251-2292
mlsullivan@rmpartnerslaw.com
dmckinley@rmpartnerslaw.com